IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

**CIVIL ACTION NO. 2:20-CV-136 (WOB-CJS)**

**LOCK LOGISTICS, LLC,**                                                                 **PLAINTIFF,**

**VS.**                              <u>**MEMORANDUM OPINION AND ORDER**</u>

**HARUN TRANSPORTATION, INC., ET AL.,**                                 **DEFENDANTS.**

This is an action brought by Lock Logistics, LLC ("Lock") against Harun Transportation, Inc. ("Harun"), Canal Insurance Company ("Canal"), and Certain Underwriters at Lloyd's, London ("Lloyd's") stemming from the damage of fresh flowers in transit from Florida to Massachusetts in June 2020. Currently before the Court are the parties' motions for summary judgment. (Doc. 67; Doc. 69; Doc. 70; Doc. 72; Doc. 74). However, having reviewed this matter, and being sufficiently advised, the Court finds that it lacks subject matter jurisdiction and therefore dismisses the case.

*Factual and Procedural Background*

Because this Memorandum Opinion and Order does not reach the bulk of the parties' underlying claims, an in-depth recitation of the facts is not necessary. However, a few points are relevant.

Plaintiff Lock is a freight brokerage service provider. (Doc. 18 ¶ 8). On June 17, 2020, Lock entered into a Broker/Carrier Agreement with Defendant Harun, a motor carrier, to transport fresh

1

flowers from Florida to Massachusetts for one of Lock's customers. (*Id.* ¶ 11-13; Doc. 18-1). The following day, Harun picked up the load. (Doc. 67 at 3). On June 21, 2020, the load was rejected at its destination because the flowers were frozen. (*Id.*; Doc. 74-6). Lock subsequently paid its customer for the value of the flowers, in the amount of $60,395. (Doc. 67 at 4).

Defendant Canal, Harun's insurer, denied coverage for the loss of the load of flowers. (Doc. 72 at 3-4). Defendant Lloyd's, Lock's insurer, has not definitively issued a determination of coverage because, it claims, Lock has failed to provide relevant documentation. (Doc. 18 ¶ 29; Doc. 74-1 at 6).

Lock filed this suit on September 25, 2020, naming only Harun as a defendant. (Doc. 1). Thereafter, Lock filed an amended complaint, asserting: (1) a Carmack Amendment claim against Harun; (2) a claim for breach of contract against Harun; (3) a claim for breach of bailment against Harun; (4) a claim for bad faith and violation of the Kentucky Unfair Claims Settlement Practices Act against Canal; (5) a claim for breach of contract or, alternatively, rescission, against Lloyd's; and (6) a claim for bad faith and violation of the Kentucky Unfair Claims Settlement Practices Act against Lloyd's. (Doc. 18).

Canal filed a crossclaim against Harun for declaratory judgment as to insurance coverage. (Doc. 26). Harun responded by filing its own crossclaim against Canal for declaratory judgment

2

as to coverage. (Doc. 34). Lloyd's also filed a counterclaim against Lock for declaratory judgment as to insurance coverage. (Doc. 31).

## *Analysis*

### A. The Carmack Amendment

The Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, *et seq.*, "created a national scheme of carrier liability for loss or damages to goods transported in interstate commerce." *Exel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015). "It makes a motor carrier fully liable for damage to its cargo unless the shipper has agreed to some limitation in writing." *Id.* (citing 49 U.S.C. §§ 11706(a), (c); 49 U.S.C. § 14101(b)).

However, "[t]he Carmack Amendment applies only to transportation subject to motor carrier or freight forwarder jurisdiction of the Secretary of Transportation or the Surface Transportation Board." *Serv. First Logistics, Inc. v. J. Rodriguez Trucking, Inc.*, No. 16-14337, 2017 WL 1365410, at *2 (E.D. Mich. Apr. 14, 2017); *see also Acuity Ins. Co. v. McDonald's Towing & Rescue, Inc.*, 747 F. App'x 377, 380 (6th Cir. 2018) (affirming exception to Carmack Amendment based on lack of jurisdiction under 49 U.S.C. § 13506).[1]

---

[1] Lock notes that Harun agreed to comply with federal regulations under the Broker/Carrier Agreement. (Doc. 88 at 6; Doc. 86-1 at 24-26).

3

49 U.S.C. § 13506 provides that:

(a) In general.—Neither the Secretary nor the Board has jurisdiction under this part over—
. . .
(6) transportation by motor vehicle of—
. . .
(B) agricultural or horticultural commodities (other than manufactured products thereof);
(C) commodities listed as exempt in the Commodity List incorporated in ruling numbered 107, March 19, 1958, Bureau of Motor Carriers, Interstate Commerce Commission . . . .

Administrative Ruling 119, a modified version of Administrative Ruling 107, provides that "[f]lowers – growing or cut" are exempt horticultural commodities and that "[p]ackaging exempt commodities does not affect their exempt status."[2]

Lock argues that Administrative Ruling 119 was vacated by the ICC in Administrative Ruling 133. (Doc. 88 at 4–5). While Administrative Ruling 133 notes that "Rulings No. 110 and 119 are strictly administrative interpretations and do not have the effect of law," it also provides that it is merely simplifying the regulations by replacing Ruling 119 with a more streamlined list including only non-exempt commodities. *Agric. Commodities Exemption (49 C.F.R. Part 1047) (Admin. Ruling No. 133)*, 4 I.C.C. 2d 402, 402–03 (I.C.C. May 5, 1988). Ruling 133 states that "[n]o

---

However, the parties cannot alter the jurisdiction of the Secretary of Transportation or the Surface Transportation Board, and thus application of the Carmack Amendment, by contract.
[2] *Composite Commodity List of Administrative Ruling No 119*, Fed. Motor Carrier Safety Admin. 17, 21, https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/Administrative_Ruling_119.pdf (last visited Nov. 22, 2022).

substantive change is intended by the revision of this regulation or the issuance of the new administrative ruling. *Previously issued administrative rulings remain in effect,* but will no longer be published in the Code of Federal Regulations." *Id.* at 404 (emphasis added). Accordingly, the Court finds that Administrative Ruling 119 was not vacated and, while it is not binding, remains persuasive regarding interpretation of the exemptions of § 13506.

Lock also argues that the flowers at issue are non-exempt manufactured commodities under § 13506(a)(6)(B) because they were transported in the form of bouquets and had been cut, mixed with other flowers, and packaged. (Doc. 88 at 3). However, this argument also fails.

The Supreme Court opined that, for a product to be considered "manufactured," "'[t]here must be transformation; a new and different article must emerge, having a distinctive name, character, or use.'" *E. Tex. Motor Freight Lines, Inc. v. Frozen Food Exp.*, 351 U.S. 49, 53 (1956) (quoting *Anheuser-Busch Brewing Ass'n v. United States*, 207 U.S. 556, 562 (1908)). It then concluded that killing, dressing, and removing the feathers and entrails of a chicken did not transform the chicken into a manufactured commodity because it retained a "continuing substantial identity." *Id.* at 54.

Although Lock relies on a case affirmed by the Sixth Circuit in which a court found that shelling peanuts rendered them a

5

manufactured product, that case was decided before the Supreme Court's decision in *Frozen Food*. *See I.C.C. v. Weldon*, 90 F. Supp. 873, 876 (W.D. Tenn. 1950), *aff'd sub nom. Weldon v. Interstate Com. Comm'n*, 188 F.2d 367 (6th Cir. 1951).

Further, a court in the Eastern District of Michigan declined to follow *Weldon* in 2017, relying instead on the Supreme Court's later decision in *Frozen Food* and Administrative Ruling 119 to conclude that lettuce, which had been washed, cut, and packaged as a "spring mix," was not manufactured. *Rodriguez*, 2017 WL 1365410, at *3–4.

Much like the lettuce in *Rodriguez*, the flowers here were merely cut, mixed with other flowers, and packaged. These actions neither constitute a transformation nor create a new and different article. Just as the chicken in *Frozen Food* retained its identity despite its preparation for sale, here too, the flowers remained flowers, even when prepared as bouquets. Further, Administrative Ruling 119 specifically provides that cut flowers are exempt horticultural commodities and that packaging them does not alter their exempt status. Thus, the Court finds that the flowers at issue were not manufactured and are exempt from the purview of the Carmack Amendment under § 13506(a)(6)(B).

6

**B. Subject Matter Jurisdiction**

Because there is no colorable Carmack Amendment claim asserted in this case, the Court must assess whether it retains subject matter jurisdiction over the remaining claims.

> Lack of subject matter jurisdiction may be raised at any time. Indeed, even if the litigants do not identify a potential problem in that respect, it is the duty of the court—at any level of the proceedings—to address the issue sua sponte whenever it is perceived.

2 James Moore et al., *Moore's Federal Practice* § 12.30[1] (3d. 2022) (footnotes omitted).

Lock asserts that this Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331, 49 U.S.C. § 14706, and 28 U.S.C. § 1337(a). (Doc. 88 at 6). However, 49 U.S.C. § 14706 is the Carmack Amendment, which, as just discussed, is inapplicable to Lock's claims. Further, 28 U.S.C. § 1337(a) pertains only to "proceeding[s] arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies" and 28 U.S.C. § 1331 pertains to "civil actions arising under the Constitution, laws, or treaties of the United States." Because none of the remaining claims in this case arise under any Acts of Congress or federal laws, this Court does not have original subject matter jurisdiction over them under either statute.[3]

---

[3] Although Lock relies on *Mitsui Sumitomo Insurance USA, Inc. v. Maxum Trans, Inc.*, for its argument that an allegation of a Carmack Amendment violation is alone sufficient to give this Court subject matter jurisdiction, (Doc. 88 at 6), that case also involved a viable Carmack

Similarly, the Court finds no basis for diversity jurisdiction under 28 U.S.C. § 1332.[4] Because this Court has dismissed the only federal claim asserted, it declines to exercise supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(c)(3). *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." (footnote omitted)).

### *Conclusion*

Therefore, for the reasons stated above, **IT IS ORDERED** that:

(1) Plaintiff's Carmack Amendment claim pursuant to 49 U.S.C. § 14706 be, and is hereby, **DISMISSED WITH PREJUDICE;**

(2) All other claims be, and are hereby, **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3);

(3) The parties' motions for summary judgment (Doc. 67; Doc. 69; Doc. 70; Doc. 72; Doc. 74) be, and are hereby, **DENIED AS MOOT;**

(4) A separate judgment shall enter concurrently herewith.

---

Amendment claim against a second defendant, unlike this case. *See* No. 3:16-CV-191, 2016 WL 7496737, at *2 (S.D. Ohio Dec. 30, 2016).

[4] Although Lloyd's asserts that this Court has diversity jurisdiction over its counterclaim, (Doc. 31 at 12), it is undisputed that the damaged flowers were valued at $60,395, which is well below the $75,000 threshold of 28 U.S.C. § 1332.

8

This 23rd day of November 2022.



Signed By:
*William O. Bertelsman* WOB
United States District Judge

9